**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM TIERNO, Petitioner | : | **CIVIL NO. 3:CV-05-973** |
| v. | : | (JUDGE NEALON) |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, ET AL., Respondents | : | |

FILED
SCRANTON
NOV 01 2005
PER ______
DEPUTY CLERK

**MEMORANDUM and ORDER**

Petitioner, William Tierno,[1] an inmate currently incarcerated at SCI-Frackville, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 13, 2005, challenging his denial of parole. (Doc. 1).[2] Specifically, Petitioner asserts that his denial of parole violated not only due process, because the denial failed to reflect the reasons upon which the decision was based, but also the ex post facto clause. Named as Respondents are the Northumberland County District

---

[1] At various times throughout his incarceration, petitioner was also known as Kevin Prieno

[2] The petition was originally filed in the United States District Court for the Eastern District of Pennsylvania which, by order dated March 31, 2005, transferred the case to this court inasmuch as Petitioner was not only incarcerated within this district but also challenges convictions imposed by the Northumberland County Court of Common Pleas, which is likewise within the jurisdiction of the Middle District.

Attorney and the Pennsylvania Board of Probation and Parole ("PBPP"). The Respondents filed their responses to the petition on June 7, 2005 and June 28, 2005, respectively. (Docs. 12, 15). Petitioner filed Traverses to these responses on June 17, 2005 and July 15, 2005. (Docs. 13, 17). Supplemental briefs were filed on August 22, 2005 and September 1, 2005. (Docs. 21, 23). The matter is now ripe for disposition and, for the reasons that follow, the petition will be granted, and the matter will be remanded to the PBPP.

**Background**

In 1984, while on parole for property crimes for which he had received a twelve-year sentence ("initial conviction"), Petitioner absconded from supervision and committed additional crimes of burglary, theft and receiving stolen property ("1984 convictions"). For these crimes he received an aggregate sentence of two (2) to ten (10) years incarceration. However, because he also received a forty-eight (48) month recommittal sentence on the parole violation, which was to be served first, his new sentences had an effective start date of June 27, 1988, with a minimum release date of June 27, 1990 and a maximum release date of June 27, 1998.

In 1991, after being paroled from his state sentences to serve a detainer sentence in Bradford County, from which he was released in August 1991, Petitioner again absconded from state parole supervision. In 1992, he was convicted and

sentenced for unlawful taking, forgery and receiving stolen property ("1992 convictions"). He also was recommitted on his two (2) previous state sentences as both a technical parole violator, for which he receive a six-month prison term, and a convicted parole violator, for which he received a twelve-month prison sentence. Calculating the constructive reparole date on his initial twelve year sentence to be in December of 1993, the maximum release date for the 1984 sentences was determined to be April 29, 2001. However, due to misconduct, his constructive reparole date for the initial twelve year offense was canceled, and he did not complete that sentence until May 19, 1997, at which time he began reserving the 1984 sentences. The maximum expiration date for the 1984 sentences was calculated to be September 26, 2004. At that time, he commenced serving the eight year and nine month to twenty four year sentences for the 1992 convictions. His minimum sentence is set to expire on December 2, 2007, at which time he will be eligible for a parole hearing, and his maximum projected release date is March 2, 2023.

In the present petition, Tierno raises two (2) grounds for relief, *to wit.*, violations of due process and the ex post facto clause. Petitioner asserts that when the PBPP denied him parole on September 6, 2002, it failed to provide the reasons for denial of parole, in violation of due process guarantees, and that it also violated the ex post facto clause since the PBPP retroactively applied amendments to the state parole

law to him. Respondents contend that Petitioner failed to seek review of these claims in the Pennsylvania courts, and that the present petition should be dismissed, without prejudice, to allow Petitioner to exhaust these claims.

**Discussion**

*I. Exhaustion of Remedies*

As a threshold matter, a habeas petitioner must either show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the state courts, or that there is an absence of available state court corrective process, or that circumstances exist rendering the available state court process ineffective to protect the petitioner's rights. *See* 28 U.S.C. § 2254(b).[3] However, exhaustion is not a jurisdictional requirement, Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir.1995), and failure to exhaust is not an insurmountable bar to

---

[3] Section 2254(b)(1) of title 28 U.S.C. provides:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that --
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

consideration of the merits of a habeas petition. Granberry v. Greer, 481 U.S. 129, 131 (1987). Courts may exercise discretion to determine whether comity and federalism will be better served by requiring exhaustion or by addressing the merits of the petition. Id; Granberry, 481 U.S. at 131. Additionally, exhaustion of state court remedies may be excused when state review of the issue would be futile.[4] *But see* Cimaszewski v. Bd. of Prob. & Parole, 868 A.2d 416, 427 (2005); Bivins v. Klem, 2005 WL 1259808 (M.D.Pa. 2005)(Conaboy, J.).

However, because a review of the Parole Board's decision concerning Petitioner's denial of parole in September, 2002 does not indicate upon what factors the decision was based, the court is unable to determine if the denial is in line with the pre-1996 requirements of the Parole Act. The meritoriousness of the ex post facto claim cannot be resolved absent reasons listed by the Board. In that sense, and for that reason, exhaustion on this issue would be futile because it appears that a review of the 2002 parole denial vis-a-vis the 1996 amendments and ex post facto considerations would necessarily require remand to the Board to articulate those

---

[4] In light of recent case law, it appears that Petitioner could seek mandamus relief in the Pennsylvania Courts only with respect to his ex post facto allegations, and not as to the due process issues he raises. *See* DeFoy v. McCullough, 393 F. 3d 439, 446 (3d Cir. 2005)(Weis, J., concurring). Accordingly, in the absence of seeking such relief, only his ex post facto claim would be subject to dismissal for failure to exhaust his available remedies.

factors contemplated in the denial of parole.

*II. Due Process Violations*

Petitioner asserts, correctly, that his parole denial on September 6, 2002 failed to reference any reasons for the Board's decision. Rather, it merely stated that "[t]he fair administration of justice cannot be achieved through release on parole." Consequently, the question now before the court is whether the PBPP must articulate reasons in rendering a parole decision. The Pennsylvania Commonwealth Court addressed this issue in Voss v. Pennsylvania Bd. of Probation and Parole, 788 A.2d 1107 (Pa.Cmwlth. 2001), wherein that court stated:

> "[T]he law is well settled that the Board has broad discretion in making parole decisions. However, it does not follow that the Board has no corresponding duty to consider and to act upon parole applications according to specifically articulated statutory standards. Essentially, the Court is not persuaded that the Board's denial of [Petitioner's] parole application based upon an "achieving the fair administration of justice" concept meets the requirements of due process. [Petitioner] has a clear right to receive a statement of the reasons for the denial of his parole application[.]

Id. at 1111. See also Richardson v. Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 286 (3rd Cir. 2005). The Voss court went on to observe that because of the "Board's failure to advise [Petitioner] of what requirements he failed to meet, there is no way to determine what standards the Board relied upon to deny him parole. Hence

the Board's action was arbitrary and capricious and also constituted a denial of his substantive due process rights." Id. at 1110. Such reasoning is in line with prior case law, both state and federal. *See* United States ex rel. Harrison v. Pace , 357 F.Supp. 354 (E.D.Penn.1973) (holding that a prisoner was entitled to a statement of reasons for parole denial so that he could "appropriately adjust his future conduct."); U.S. ex rel. Johnson v. Chairman, N.Y. State Board of Parole, 363 F.Supp. 416 (E.D.N.Y. 1973) (same); Boyd v. Ward, 802 A.2d 705, 708 (Pa.Cmwlth. 2002) (Board of Probation and Parole's parole denial decision reading "the fair administration of justice cannot be achieved through [inmate's] release on parole," without detailing reasons for denial, did not meet minimal written rationale requirements of parole statute mandating the filing of brief statement of reasons for the Board's action); In re Sturm, 11 Cal.3d 258,n.14 (Cal. Sup. 1974) (due process requires that the Authority support its determinations with a statement of its reasons therefor.); Monks v. N.J. State Parole Board, 71), 277 A.2d 193 (N.J. 1971)( reasons must accompany a parole denial to insure a "responsible and just determination and 'a proper basis for effective judicial review.")

Further, in addressing this issue previously in Soloway v. Weger, 389 F.Supp. 409 (M.D.Pa. 1974) (Nealon, J.), this court held that a meaningful statement of reasons is the least that can be furnished to a prisoner upon the denial of parole. Id. at

412. Citing Johnson v. Chairman of New York State Board of Parole, 500 F.2d 925 (2d Cir. 1974), this court noted in the Soloway case:

> [T]he Johnson court held that the statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. Among the 'questionable' reasons the Court referred to a policy '. . . denying parole where, because of the type of offense for which he had been committed, the prisoner has not yet served an 'appropriate period' of incarceration that satisfied unarticulated and possibly inconsistent views of Board members regarding community retribution, incapacitation, or general deterrence, despite the prisoner's readiness for the community and lack of need for further institutional control[.]' The Court also articulated the Board's duty of observing meaningful criteria for determining in each case when a prisoner's release 'is not incompatible with the welfare of society.' Accordingly, I conclude that petitioner's right to apply for parole, and a possible early release, is a statutory creation and is sufficiently embraced within the concept of 'liberty' to entitle him to a meaningful written statement as to the reasons for the denial of his application. *See* Craft v. Attorney General of United States, 379 F.Supp. 538 (M.D.Pa.1974).

Id. at 410-411. Based on the above cases, it appears clear that Tierno had a due process right to a statement of reasons by the PBPP when it denied him parole in September, 2002. The statement offered in support of the parole denial, that the fair administration of justice cannot be achieved through parole, is insufficient to meet

due process considerations. Accordingly, the court will remand the matter to the PBPP to articulate the bases of its denial, should transcripts or recordings of the hearing be available or, in the absence of such a record, to conduct a new parole hearing.

*III. Ex Post Facto Implications*

Petitioner challenges the denial of parole on the ground that the Board violated the Ex Post Facto Clause of the United States Constitution by applying the 1996 amendment to 61 Pa.Stat. §331.1, the statute governing parole standards. "The Ex Post Facto clause of the United States Constitution applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" Mickens-Thomas v. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), *quoting* California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995). Ex post facto restrictions apply to parole matters. *See* Garner v. Jones, 529 U.S. 244, 250-255 (2000).

In 1996, the Pennsylvania legislature amended the section of its parole law setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek

to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[5] Previously, section 331.1 made no mention of pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[6]

---

[5] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administra- tion of justice by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999).

[6] Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that

In this case, a review of the Parole Board's decision concerning Petitioner's denial of parole in September, 2002 does not indicate what factors upon which the decision was based. Consequently, the court is unable to determine if the denial is in line with the pre-1996 requirements of the Parole Act. Inasmuch as the meritoriousness of the ex post facto claim cannot be resolved in the absence of reasons being listed by the Board, the court can conclude neither that this claim is without merit nor that there is a substantial basis for denying parole regardless of the 1996 amendments to the Parole Act. Where, as here, the Board articulates no rationale for denial of parole, consistent with its pre-1996 practice and policies, no inference of an Ex Post Facto violation may be drawn.

**Conclusion**

Based on the foregoing analysis, the court concludes that the PBPP violated Petitioner's due process rights when, in September, 2002, it denied him parole without announcing the reasons for doing so. In the absence of listed reasoning, the court is unable to determine whether the parole denial constituted an ex post facto violation. Accordingly, the matter will be remanded to the PBPP to conduct a parole hearing, and directing them to articulate what factors or reasons form its decision.

---

> end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

An appropriate order follows.

**Date: November 1, 2005**

**s/ William J. Nealon**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM TIERNO, | : | |
| Petitioner | : | **CIVIL NO. 3:CV-05-973** |
| | : | |
| v. | : | (JUDGE NEALON) |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, ET AL., | : | |
| Respondents | : | |

**ORDER**

ACCORDINGLY, THIS 1st DAY OF NOVEMBER, 2005, IT IS HEREBY ORDERED THAT:

1. This matter is remanded to the Pennsylvania Board of Probation and Parole.

2. The Pennsylvania Board of Probation and Parole shall, within 30 days of the date of this order, offer a detailed statement of reasons upon which it relied in denying parole to Petitioner in September, 2002, if a record of the parole hearing exists. If such a record is not available, the Pennsylvania Board of Probation and Parole shall, within thirty (30) days of the date of this order, conduct a parole hearing with respect to Petitioner. In rendering a decision thereon, the Board shall offer a detailed statement of reasons upon which it bases it determination.

3. Petitioner's Motion for an Evidentiary Hearing (Doc. 18) is DISMISSED AS MOOT.

4. The Clerk of court is directed to close this case.

**s/ William J. Nealon**
United States District Judge